1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSE M. NAVARRO                           No.  2:19-cv-01185 AC

12                  Plaintiff,

13        v.                                   ORDER

14   ANDREW SAUL, Commissioner of Social
     Security,
15
                    Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under

20   Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1]  For the reasons that

21   follow, the court will grant plaintiff's motion for summary judgment and deny the

22   Commissioner's cross-motion for summary judgment.

23   ////

24   ////

25   _____

26   [1]  SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); Washington State Dept.
     of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003)
27   ("Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of
     benefits for aged, blind, or disabled individuals, including children, whose income and assets fall
28   below specified levels . . . .").

                                                  1

I.  PROCEDURAL BACKGROUND

Plaintiff applied for supplemental security income on September 15, 2015. Administrative Record ("AR") 334-344.[2]  Plaintiff alleged the disability onset date was October 14, 2012.  Id.  The applications were disapproved initially, AR 209-221, and on reconsideration, AR 222-239.  On January 9, 2019, ALJ Vincent Misenti presided over hearings on plaintiff's challenge to the disapprovals.  AR 184-208 (transcript).  Plaintiff was present and testified at the hearing through a Spanish interpreter.  AR 186.  He was represented by attorney Langley Kreuze at the hearing.  Id.  Susan Green, a vocational expert, also testified at the hearing.  AR 202-06.

On June 20, 2018, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 21-30 (decision), 31-35 (exhibits).  On May 8, 2019, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-3 (decision).

Plaintiff filed this action on June 26, 2019.  ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3).  The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 7, 8.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 12 (plaintiff's summary judgment motion), 15 (Commissioner's summary judgment motion), 18 (plaintiff's response).

II.  FACTUAL BACKGROUND

Plaintiff was born in 1963, and accordingly was 52 years old when he filed his application.  AR 334.  Plaintiff cannot read or speak English, AR 353, attended three years of college and worked as a general laborer, mechanic, sanitation technician, and tractor operator, AR 355.

III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

---

[2]  The AR is electronically filed at ECF Nos. 11-3 to 11-19 (AR 1 to AR 1040).

1    Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'" Andrews

2    v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

3         Substantial evidence is "more than a mere scintilla," but "may be less than a

4    preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant

5    evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

6    Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the

7    record can constitute substantial evidence, only those 'reasonably drawn from the record' will

8    suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

9         Although this court cannot substitute its discretion for that of the Commissioner, the court

10   nonetheless must review the record as a whole, "weighing both the evidence that supports and the

11   evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS,

12   846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

13   court must consider both evidence that supports and evidence that detracts from the ALJ's

14   conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

15        "The ALJ is responsible for determining credibility, resolving conflicts in medical

16   testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

17   Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of

18   which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart,

19   278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the

20   ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn

21   v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

22   2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

23   evidence that the ALJ did not discuss").

24        The court will not reverse the Commissioner's decision if it is based on harmless error,

25   which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

26   ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

27   2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

28   Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

IV.  RELEVANT LAW

Supplemental Security Income is available for every eligible individual who is "disabled." 42 U.S.C. § 1381a.  Plaintiff is "disabled" if he is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . . .'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. § 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI.  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id., § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id., § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis,

4

the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since September 10, 2015, the application date (20 CFR 416.971 et seq.).
>
> 2. [Step 2] The claimant has the following severe impairments: bilateral inguinal hernias status post surgical repairs, lumbar spondylosis, ventricular septal defect status post surgical repair, psoriasis, and left knee medial meniscus horn tear (20 CFR 416.920(c)).
>
> 3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. [Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he is limited to occasional climbing of ladders, ropes, and scaffolds. He is able to frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.
>
> 5. [Step 5] The claimant is capable of performing past relevant work as a janitor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity 20 CFR 416.965.5.
>
> 6. The claimant has not been under a disability, as defined in the Social Security Act, since September 10, 2015, the date the application was filed (20 CFR 416.920(f)).

AR 24-30.

As noted, the ALJ concluded that plaintiff was "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 30.

## VI.  ANALYSIS

Plaintiff alleges the ALJ erred by (1) refusing to admit evidence received by counsel after the administrative hearing, and (2) failing to properly evaluate the medical opinion evidence in

////

1  asserting that plaintiff can perform the demands of medium work.  ECF No. 13 at 1.  The court
2  agrees.

3          A.  <u>The ALJ's Error in Refusing to Admit the New Evidence Was Not Harmless</u>

4          Plaintiff alleges the ALJ committed reversible error by refusing to admit a medical record
5  that was produced by UC Davis Health System ("the new medical record"), AR 37-183, after the
6  administrative hearing, ECF No. 13 at 10-15.  Defendant concedes the ALJ erred, ECF No. 15 at
7  9, but argues the new medical record would not have changed the ALJ's decision and thus was
8  harmlessly omitted, <u>id.</u> at 6-8.  The court disagrees.  The proper standard for "harmless error" is
9  whether the new medical record is clearly inconsequential to the ALJ's decision.  <u>Robbins</u>, 466
10  F.3d at 855 (noting an error is harmless if it is "clear from the record that an ALJ's error was
11  inconsequential to the ultimate nondisability determination") (internal quotations and citations
12  omitted).  The court finds that the new medical record is not clearly inconsequential, and thus its
13  omission was not a harmless error.

14          The ALJ's "medium work" determination was in part based on plaintiff's status after
15  receiving ventricular septal defect ("VSD") surgery on September 6, 2016.  AR 26 ("In terms of
16  the claimants ventricular septal defect status *post surgical repair*, the undersigned finds that the
17  condition is well-supported by a reduction to a range of medium work….") (emphasis added).
18  The new medical record contains information from the day of plaintiff's VSD surgery until
19  plaintiff's follow up visit on October 6, 2016.  AR 37-49.  Plaintiff identifies information in the
20  new medical record that supports his ongoing complaints after surgery.  For example, plaintiff
21  points to an x-ray contained in the new medical record that revealed an asymmetry of the VSD
22  closure device placement, which was deemed of potential clinical significance.  AR 103.
23  Accordingly, the court agrees that the new medical record is not clearly inconsequential to the
24  ultimate nondisability determination.  Thus, the ALJ's omission of the new medical record is not
25  a harmless error, and the case must be remanded for the ALJ to properly consider the omitted
26  records.
27  ////
28  ////

B. <u>The ALJ Did Not Properly Weigh the Medical Opinions in Assessing Plaintiff's RFC</u>

1. <u>Principles Governing the ALJ's Consideration of Medical Opinion Evidence</u>

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996).  "Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. … Where [a treating or examining physician's] opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Carmickle v. Comm'r of Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted).  "The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations."  <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987).

2. <u>The Medical Opinions</u>

In this case, the ALJ assigned weight to the opinions of seven doctors: two nonexamining state agency physicians, and five examining physicians.

The ALJ assigned the greatest weight to the opinion of nonexamining state agency consultant Dr. G. Taylor, who was the only doctor to recommend a medium work RFC.  AR 25-26.  Dr. Taylor's opinion from December 2015 stated that plaintiff's exertional and postural limitations were consistent with the definition of medium work, including occasionally lifting and/or carrying up to fifty pounds and frequently lifting and/or carrying up to twenty-five pounds. <u>Id.</u>; <u>see</u> Social Security Ruling 83-10, 1983 WL 31251 (S.S.A. 1983).  This determination was based on Dr. Taylor's review of a single source of evidence—the MDSI Physician Group records, which included examining physician Dr. Gerald C. Barnes's opinion, and which Dr. Taylor found supported by objective evidence in the file.  AR 217.

Dr. Barnes's opinion, which recommended a light work RFC, was given partial weight by the ALJ.  AR 26.  Dr. Barnes performed an orthopedic exam on plaintiff in November 2015.  AR 576.  The exam consisted of a series of tests, including straight leg raises and assessing plaintiff's range of motion.  AR 577-579.  Dr. Barnes noted in relation to a few of these tests that plaintiff

7

1   experienced pain in the left inguinal area related to his hernia and/or low back.  AR 578.  Dr.

2   Barnes diagnosed plaintiff with chronic low-back pain (pathology undefined) and pain in the left

3   inguinal area associated with a hernia, and recommended plaintiff's maximum lift, carry, push or

4   pull capacity be limited to twenty pounds occasionally and ten pounds frequently.  AR 579.

5          Dr. James Shaw, a pain specialist who examined plaintiff on two separate occasions, also

6   recommended a light work RFC.  AR 499.  His opinion was given partial weight by the ALJ as

7   well.  AR 26.  The two exams—the first in April of 2014 and the second in October 2014—

8   produced relatively similar results, notably that plaintiff experienced mild spasms in his back, AR

9   486, 509, slightly reduced ranges of motion, AR 486, 509, and tested positive during the Kemp's

10  test on both of his sides, AR 488, 510.  Dr. Shaw's latter exam recommended a light duty

11  restriction for plaintiff, specifically to his upper right extremity, with limited carry, push and pull

12  capacity to twenty pounds.  AR 499.

13         Dr. James M. Kelly also recommended a light work RFC and was similarly assigned

14  partial weight by the ALJ.  AR 26.  Dr. Kelly, like Dr. Taylor, was a nonexamining state agency

15  physician.  AR 237.  His review occurred about a year after Dr. Taylor's and included two

16  additional sources—the opinion of Dr. Edward Verceles and the Amber Medical Group.  AR 235.

17  Dr. Kelly determined plaintiff was only able to occasionally lift and/or carry twenty pounds and

18  could only frequently lift ten pounds.  AR 236.

19         Dr. Verceles recommended the lowest RFC of less than sedentary and was assigned little

20  weight by the ALJ.  AR 26.  Dr. Verceles's two opinions, from October 2015, AR 1029-1033,

21  and February 2016, AR 627-631, determined that plaintiff should not work until he underwent

22  left hernia surgery, AR 1032, AR 631.  It also noted tenderness to palpitation of plaintiff's lower

23  lumbar spine and bilateral paraspinal muscles, decreased range of motion, and a positive FABER

24  test on his right side.  AR 1031.

25         The ALJ also assigned little weight to the opinion of Dr. Anderson, who recommended a

26  light work RFC.  AR 475.  Dr. Anderson's June 2014 opinion recognized plaintiff was suffering

27  from three general ailments—right inguinal hernia and direct inguinal herniorrhaphy, left direct

28  inguinal hernia, and multiple cardiac conditions—but determined only the right inguinal hernia

1   was permanent and stationary.  AR 475.  Accordingly, his opinion focused mainly on plaintiff's

2   right hernia, which he found was largely resolved.  AR 477.  Nonetheless, Dr. Anderson

3   recommended that plaintiff not work until he received treatment for the other injuries, at which

4   point he could return to work with a ten-pound lifting restriction.  AR 477.

5        Finally, the ALJ assigned no weight to Dr. Watson, who examined plaintiff back in 2012.

6   AR 26.  Dr. Watson's medical opinion, dated October 15, 2012, was a single page that

7   recommended a light work RFC for plaintiff.  AR 845.  It did not include any additional

8   information.  AR 845.

9        3. <u>The ALJ Erred Weighing Dr. Shaw's and Dr. Verceles's Opinions; The ALJ Did</u>

10          <u>Not Err in Weighing The Other Medical Opinions</u>

11       Plaintiff contends that the ALJ did not provide adequate justification for deferring to Dr.

12   Taylor's opinion and rejecting those of the other physicians.[3]  ECF No. 13 at 18.

13          a. <u>Dr. Shaw</u>

14       The court agrees that the ALJ did not provide an adequate justification for discounting Dr.

15   Shaw's opinion.  The ALJ stated that he assigned partial weight to Dr. Shaw because: (1) Dr.

16   Shaw's findings were predominantly normal and thus inconsistent with a light work

17   recommendation, and (2) a determination of light work was not supported by the effectiveness of

18   plaintiff's right hernia surgery.  AR 26.

19       As discussed above, Dr. Shaw performed a series of tests on two separate occasions—

20   once in April of 2014 and again in October 2014.  AR 26.  The court does not agree with plaintiff

21   that the ALJ's characterization of the results as "predominantly normal" was itself erroneous.

22   Given that the numerical majority of the test results were normal or negative, they were, quite

23   literally, *predominantly* normal.  AR 486-490, AR 508-513.  However, it was nonetheless error

24   for the ALJ to use this characterization of the exams as "predominantly normal" to bypass

25

26   [3]  Plaintiff mentions Dr. Watson when summarizing the relevant medical evidence, ECF No. 13 at 2, but does not contest the weight the ALJ assigned his opinion, ECF No. 13 at 16-23.  Plaintiff

27   also does not specifically address how the ALJ erred in his assessment of Dr. Anderson's opinion. ECF No. 13 at 16-23.  Accordingly, this court will not address the weight assigned to either of

28   these doctors.

1   consideration of Dr. Shaw's actual clinical findings; the quantity of normal results is irrelevant if

2   at least one finding is notably abnormal and would potentially alter the RFC.  For example, an

3   exam indicating that a patient has cancer but is otherwise in good health could also be

4   characterized as "predominantly normal."  Here, plaintiff tested positive during the Kemp's test

5   on his left and right side, which may or may not be "inconsistent with a light work RFC."  AR

6   488, AR 510.  The ALJ failed to provide any explanation why that result was insignificant, and

7   instead merely glossed over the abnormal test result by describing the findings overall as

8   "predominantly normal."  Accordingly, the court agrees that the ALJ's overall characterization of

9   Dr. Shaw's findings as "predominantly normal" does not provide an adequate reason to discount

10  his opinion.

11          The second reason the ALJ provided—the effectiveness of plaintiff's right hernia

12  surgery—also fails to address plaintiff's abnormal result.  Perhaps the positive Kemp's test

13  contradicted the effectiveness of plaintiff's surgery; perhaps a positive Kemp's test is indicative

14  of a different ailment.  Either way, the success of plaintiff's right hernia surgery does not clearly

15  reconcile the positive Kemp's test with a medium work RFC.  Accordingly, the court finds the

16  ALJ's second reason inadequate as well.  Thus, the ALJ erred by not providing an adequate

17  reason for discounting the medical opinion of examining physician Dr. Shaw.

18                      b.  Dr. Barnes and Dr. Kelly

19          The ALJ provided the same two reasons for discounting Dr. Barnes's and Dr. Kelly's

20  opinions as Dr. Shaw's — (1) Dr. Barnes's findings were predominantly normal and thus

21  inconsistent with a light work recommendation, and (2) a determination of light work was not

22  supported by the effectiveness of plaintiff's right hernia surgery.  AR 26.  However, the court

23  finds these reasons were adequate for Dr. Barnes and Dr. Kelly.

24          Like Dr. Shaw, Dr. Barnes's physical exam was conducted after plaintiff's right hernia

25  surgery but before his left one.  AR 576 (Dr. Barnes's opinion, dated November 17, 2015,); AR

26  698-781 (plaintiff's right hernia surgery related records, noting surgery in early 2013); AR 816

27  (noting plaintiff's left hernia surgery in February 2017).  Much of Dr. Barnes's opinion reflects

28  this timeline—it noted little to no abnormal findings on plaintiff's right side, but notable pain on

the left.  AR 577-579.  Dr. Barnes's diagnoses also made no mention of plaintiff's right hernia, and the exertion and postural limitations he recommended were due to pain in plaintiff's left side (and low back pain—addressed below), not his right.  AR 579.  Thus, Dr. Barnes's opinion was consistent with the "effectiveness of plaintiff's right hernia surgery."  AR 26.  Additionally, given that plaintiff had yet to be treated for his left hernia, all the abnormal findings were properly discounted by the ALJ.  The "predominantly normal" characterization in this instance was both accurate and adequate to discount Dr. Barnes's opinion.

Dr. Barnes also diagnosed plaintiff with "low back pain, pathology undefined."  AR 579.  Though the ALJ's two reasons don't explicitly address this ailment, subsequent portions of his opinion do.  The ALJ stated the only treatment plaintiff sought for his low back pain was aquatic therapy, and that the plaintiff's testimony regarding his "extensive activities"—including daily chores, fixing his car, and going to the flea market with friends, AR 25—were inconsistent with his claim of back pain, AR 28.  Furthermore, the ALJ noted that plaintiff did not appear in acute physical distress during his exams, had a "normal gait; a negative Romberg; no gross scoliosis and normal lordotic of the spine; [and a] normal range of motion of the cervical and lumbar spine, hips, and upper and lower extremities."  AR 28.  These reasons provide substantial evidence for why the ALJ discounted Dr. Barnes's opinion despite the diagnosis of low back pain.

For similar reasons, the court also finds the ALJ's justifications were sufficient to discount Dr. Kelly's opinion. Dr. Kelly, a state agency consultant, relied in part on Dr. Barnes's opinion.  AR 235.  Accordingly, Dr. Kelly's determination reflected Dr. Barnes's, recommending the same RFC and same exertional limitations.  Thus, for the reasons discussed above, Dr. Kelly's opinion was also properly discounted.  Furthermore, because Dr. Kelly was a nonexamining physician (and not an examining one), the ALJ did not need to provide specific reasons for discounting his opinion.  See Regennitter, 166 F.3d at 1298-99; Carmickle, 533 F.3d at 1164 (noting non-examining medical opinions are entitled to less weight than treating and examining physician opinions).  Accordingly, the court finds the ALJ provided adequate justification for discounting Dr. Kelly's and Dr. Barnes's opinion, and thus the ALJ did not err.

////

11

c. Dr. Verceles

Plaintiff argues that the ALJ's reason for assigning little weight to examining physician Dr. Verceles's medical opinions, inconsistency with the record and conflict with activities of daily living, were too generic to permit meaningful review.  ECF No. 13 at 20; AR 26.  The court agrees.  First, the reason the ALJ provided does not clearly indicate what portion of Dr. Verceles's opinion was inconsistent with the medical record.  Specifically, it is unclear if the ALJ considered Dr. Verceles's RFC recommendation alone to be inconsistent with the medical record, or if some of Dr. Verceles's findings were deemed inconsistent as well.

Second, the ALJ failed to provide specific reasons for favoring one examining physician's findings over another's.  For example, Dr. Verceles found that plaintiff had a positive FABER test, while Dr. Shaw did not, AR 488.  The ALJ made no mention of the FABER test in his opinion, which implies a more favorable treatment to Dr. Shaw's evaluation.  Because these two examining physicians' opinions conflicted, the ALJ needed to provide specific and legitimate reasons supported by substantial evidence for why he resolved the conflict in favor of Dr. Shaw instead of Dr. Verecles.  Carmickle, 533 F.3d at 1164.  The ALJ provided no such reasoning.  Accordingly, the ALJ did not provide an adequate reason for discounting Dr. Verceles's opinion.  This was error.

d. Dr. Taylor

The ALJ assigned the greatest weight to non-examining state agency consultant Dr. Taylor because "the doctor's opinion [was] the most consistent with the medical record as a whole, including the claimant's treating history, the effectiveness of treatment in reducing his symptoms, the objective findings, and his varied activities of daily living."  AR 26.  The court finds this reasoning sufficient.

Plaintiff argues that the ALJ cherry-picked medical evidence that was consistent with his determination, while ignoring other evidence.  ECF No. 13 at 21-22.  He specifically points to the ALJ's failure to address the merits of Dr. Taylor's opinion compared to the merits of Dr. Kelly's, the other state agency consultant.  Id.  As plaintiff accurately notes, the ALJ's opinion did not mention that Dr. Taylor reviewed only a single source of medical evidence, where Dr. Kelly

12

1   reviewed three, nor that Dr. Taylor's opinion preceded Dr. Kelly's.  ECF No. 13 at 21-22.

2          Nonetheless, plaintiff's discussion of the comparative merits of Dr. Taylor's opinion is

3   ultimately irrelevant to the question whether Dr. Taylor's opinion was consistent with the entire

4   record.  Dr. Taylor's opinion could have been the earliest of all the opinions, or considered the

5   least amount of evidence, and still have accurately reflected the medical record.  Accordingly, the

6   specific example plaintiff provides of alleged cherry-picking by the ALJ doesn't establish error.

7   Moreover, the court finds that this is a mischaracterization of the ALJ's treatment of the evidence.

8          First, the court finds this is a mischaracterization because the ALJ's opinion did not omit

9   all evidence that was inconsistent with the ultimate RFC; rather, it discussed unfavorable

10  evidence for each of plaintiff's injuries.  Plaintiff alleges disability on the basis of a back injury, a

11  heart condition, a left knee condition, psoriasis, and hernias.  AR 24.  For each condition, the ALJ

12  described plaintiff's treatment history and current status, including evidence that did not explicitly

13  support his RFC determination.  For example, he noted that plaintiff testified that he "still

14  experienced pain at the left inguinal," AR 27, and that an MRI of plaintiff's knee "showed grade

15  II intrasubstance tear of the body and posterior horn of the medial meniscus," AR 28.  The ALJ

16  then reconciled these instances with his ultimate determination, i.e. though plaintiff experienced

17  pain in his left inguinal, he had not complained to his primary care provider; though plaintiff's

18  MRI showed ongoing issues, these were "mild" findings.  Id.  The ALJ identified unfavorable

19  findings from plaintiff's physical exams, and then conflicting favorable ones.  Id.  Thus, the

20  ALJ's decision did not only consider favorable evidence.

21         Second, the court finds that the ALJ did not cherry-pick evidence because Dr. Taylor's

22  opinion was reasonably described as "consistent with the record as a whole."  AR 26.  As

23  discussed below, the medical record suggests plaintiff's psoriasis, heart condition, and hernias

24  were successfully treated, and that plaintiff's back and knee injuries are conducive with a medium

25  work RFC.  For example, plaintiff struggled to find a treatment for his psoriasis after Clobesterol

26  provided no relief, AR 596, and he was advised against taking another Kenalog shot, AR 613.  He

27  was thus referred to dermatology for immunotherapy, AR 613, and by March 7, 2017, his

28  psoriasis was in remission, AR 997.

1    In early January of 2016, plaintiff was experiencing intermitted episodes of shortness of

2    breath with exertion.  AR 676.  These episodes persisted, as well as symptoms of exertional

3    dyspnea and increased fatigue.  AR 673-674.  In March of 2016, plaintiff's left ventricular was

4    enlarged and VSD closure surgery was recommended.  AR 669.  Plaintiff underwent surgery in

5    September 2016, and by January 2017, he reported significant improvement including resolution

6    of his shortness of breath.  AR 874.  By March of 2017, his heart conditioned was considered

7    "well controlled" after surgery.  AR 875.

8    Plaintiff's right hernia issues arose from a work-related incident in 2012.  AR 454.  In

9    January of 2013, he underwent right inguinal hernia repair with mesh.  AR 726-729.  Dr. Barnes's

10   and Dr. Anderson's opinions both reflect the success of that surgery, AR 576-579 (Dr. Barnes's

11   opinion), AR 438-451 (Dr. Anderson's opinion), and plaintiff testified to being reasonably active

12   and denied any related pain.  AR 874.  Plaintiff underwent left hernia surgery repair in February

13   2017.  AR 953.  Though plaintiff continued to experience moderate pain on his left side,

14   medication decrease the symptoms.  AR 810.  Furthermore, plaintiff was still able to participate

15   in fairly active daily endeavors, such as cleaning the house, working on his car, gardening, and

16   going to the flea market with friends.  AR 25.

17   Plaintiff complained of a knee issue to his primary care provider in September 2015, AR

18   603, though an examination of the knee was unremarkable, AR 605, and plaintiff did not have

19   any specific treatment until the end of 2017, AR 603-606, AR 611-714, AR 810-818, and AR

20   980-1022.  An MRI in March 26, 2017 showed plaintiff was suffering from a grade II tear of both

21   the body and posterior horn of the medial meniscus, degeneration of the structures, mild

22   osteoarthritis, and mild edema around the knee joint.  AR 996.  Nonetheless, plaintiff declined

23   surgery to repair the tears, AR 985, and continued to participate in the activities described above,

24   AR 25.  Finally, plaintiff complained of ongoing back pain as early as 2012.  AR 492.  Aquatic

25   therapy has helped, and in March of 2017, plaintiff reported that his back pain was fairly

26   controlled.  AR 997.  He also continued to participate in the activities described above.  AR 25.

27   The ALJ's reasons for assigning great weight to Dr. Taylor's opinion reflected this

28   medical history — "the doctor's opinion [was] the most consistent with the medical record as a

14

1    whole, including the claimant's treating history, the effectiveness of treatment in reducing his

2    symptoms, the objective findings, and his varied activities of daily living."  AR 46.  Thus, the

3    court finds that the ALJ did not err by assigning great weight to Dr. Taylor on grounds that his

4    opinion was consistent with the record.[4]

5              C.  Remand for Further Consideration is Necessary

6         As discussed above, the ALJ erred in his evaluation of the medical opinion evidence and

7    by not considering the new medical record.  The undersigned agrees with plaintiff that the ALJ's

8    error is harmful and remand for further proceedings by the Commissioner is necessary.  ECF No.

9    19 at 9.  An error is harmful when it has some consequence on the ultimate non-disability

10   determination.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).  The

11   ALJ's error in failing to consider medical records was harmful as discussed above, as well as his

12   failure to properly weigh the medical opinion evidence; correcting the errors may very well result

13   in a more restrictive residual functional capacity assessment, which may in turn alter the finding

14   of non-disability.

15        It is for the ALJ to determine in the first instance whether plaintiff has severe impairments

16   and, ultimately, whether he is disabled under the Act.  See Marsh v. Colvin, 792 F.3d 1170, 1173

17   (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social

18   Security Administration in the first instance, not with a district court").  "Remand for further

19   administrative proceedings is appropriate if enhancement of the record would be useful."

20   Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Further development of the record

21   consistent with this order is necessary, and remand for further proceedings is the appropriate

22   remedy.

23                          VII.  CONCLUSION

24        For the reasons set forth above, IT IS HEREBY ORDERED that:

25        1.  Plaintiff's motion for summary judgment (ECF No. 12), is GRANTED;

26   _____

27   [4]  Of course, it may be the case that on consideration of the new medical record and
     reconsideration of Dr. Shaw's and Dr. Verceles's opinions, the ALJ reweighs the opinion of Dr.
     Taylor.  Here the court finds only that plaintiff's specific challenge to the ALJ's prior evaluation
28   of Dr. Taylor, on the basis of the medical record as it stood at the time, does not support reversal.

2.  The Commissioner's cross-motion for summary judgment (ECF No. 15), is DENIED;

3.  The matter is REMANDED to the Commissioner for further proceedings consistent with this order; and

4.  The Clerk of the Court shall enter judgment for plaintiff, and close this case.

SO ORDERED.

DATED: August 25, 2020

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE